Mitchell v. The State of Georgia

527    *S. H. MITCHELL, plaintiff in error, *v.* THE STATE OF
GEORGIA, defendant in error.

(Atlanta, January Term, 1871.)

1. CONTINUANCE—PUBLIC EXCITEMENT AND PREJU-
DICE—INSUFFICIENT TO TAKE CASE OUT OF RULE—AP-
PELLATE PRACTICE.—Where, upon an indictment for assault
with intent to murder, the prisoner moved for a continuance on the
ground of public excitement and out in his motion that prejudice ex-
isted against him by reason of the prosecutor being the editor of a
newspaper, and keeping the case before the public:

*Held*, that this showing was insufficient to take the case out of the
general rules laid down by this Court governing applications for con-
tinuance on the ground of prejudice and excitement, and that the
statutory questions prescribed for jurors protect prisoners from prej-
udice influencing their judgments upon the law and facts of the case
entrusted to their consideration; and this Court will not control the
discretion of Courts below refusing continuances on this ground.

2. JURY—DISPERSAL OF JURY BY CONSENT*—FACTS
SHOW NO INTERFERENCE—AS A RULE DISPERSAL
SHOULD NOT BE ALLOWED.—When the Judge asked the coun-
sel for the prisoner if they would consent to the jury dispersing dur-
ing the progress of the trial, which was given twice and the jury
dispersed, and the third time it was asked, prisoner, by his counsel,
objected, and the jury was held together, and there is no averment
of any improper act or interference with the jury:

. *Held*, that there is no error in law committed entitling the party to
a new trial. But such inquiry by the Court is improper; juries, after
being charged with the consideration of the case, ought not to dis-
perse and intermingle with the crowd; such opportunity endangers
the purity of verdicts, and when allowed ought not to be done by the
request of the prisoner's consent in the presence of the jury, thus
putting his assent on the principal of moral duress, where his re-
fusal might prejudice the jury against him.

3. ASSAULT AND BATTERY—NEWSPAPER PUBLICATION
PREVIOUS TO ASSAULT—OPPROBRIOUS WORDS.†—When
a newspaper publication was presented as the justification of an as-

---

*JURY—DISPERSAL OF JURY—RETIREMENT OF ONE OF
JURORS.—See the principal case cited and distinguished in Neal *v.*
State, 64 Ga. 275.

†ASSAULT AND BATTERY—NEWSPAPER PUBLICATION
PREVIOUS TO ASSAULT—OPPROBRIOUS WORDS.—"Section
103 of the Penal Code contains the following language: 'On the trial
of an indictment for an assault, or an assault and battery, the defend-
ant may give in evidence to the jury any opprobrious words, or abu-
sive language used by the prosecutor, or person assaulted or beaten;
and such words and languages may or may not amount to a justifi-
cation, according to the nature and extent of the battery, all of which
shall be determined by the jury.' It is contended for the plaintiff in
error that under this provision of law, it was his right to submit to
the jury evidence of any opprobrious words or abusive language
which had been written and printed of him by Stein previous to the
difficulty, that such words and language might be considered by the
jury, who were authorized to find, if they so thought, that they
amounted to a justification of the assault and battery, the commis-
sion of which, as charged, was, on the trial, virtually admitted. It
is not contended that at the time the battery was inflicted Stein used
any opprobrious words or abusive language. This exact question has
heretofore been before this court in the case of Mitchell *v.* State, re-
ported in 41 Ga. 527, and the interpretation we give to this statute

sault and battery, and the Judge refused, by his charge, to give such publication the effect of opprobrious words spoken in the presence of the party, or of holding the saying, "I put the publication in the paper as a man, and am responsible for it," as in effect within the provision of the Code:

*Held*, that the Judge was correct in his view of the law, and that the statute only embraces such cases where the opprobrious words are uttered in the presence of the party which, in their nature, are supposed to arouse the passions, and justify, under certain circumstances to be adjudged by the jury, instant and appropriate resentment, not disproportioned to the provocation.

4. SAME—CHARGE OF COURT—WHAT CONDUCT WILL JUSTIFY ASSAULT.‡—Where a party, meeting another, is himself the assailant, demanding explanations and apologies, or using offensive language calculated to provoke a difficulty, and the party thus assailed stepped back, putting his hand in his pocket, and the Judge charged the jury, "that M. would have been justified only when H. endeavored to draw a weapon, *or make pretence of drawing one out, if he struck before any effort or show of drawing a weapon had taken place, and struck because he put his hand in his pocket, he is guilty of the assault and battery:"

*Held*, That such charge was a correct presentation of the law; and that where a man goes to another to assail him or demand explanations or apologies, or, in anger, using offensive words, and the party

has been recognized as the law governing and restricting the admission of opprobrious words and abusive language, as a justification of an assault or assault and battery, to such as are used in the presence of the party assaulting, for many years unquestioned. In this case referred to, this court said that 'the statute only embraces such cases where the opprobrious words are uttered in the presence of the party, which, in their nature, are supposed to arouse the passions, and justify, under certain circumstances to be adjudged by the jury, instant and appropriate resentment, not disproportioned to the provocation.' On the argument of the present case, counsel for the plaintiff in error, under the rule, asked leave to review the decision in that case, which was granted; and we are now called on to determine whether we shall reverse the ruling there made, and hold the contrary proposition to be the law. On this question the present bench stands equally divided in opinion, and as, under the statute, in order to reverse a previous ruling of this court, made by three judges, the concurrence of five of the members of the court is required (Acts 1896, p. 44), the ruling made in the Mitchell case, supra, must still stand as the interpretation which this court puts upon the statute in question. Mr. Justice Lumpkin, Mr. Justice Fish and myself agree, that if we take the words of the statute as they stand alone, and read them literally, a construction which will admit in evidence printed or published words of abuse, antecedent to the assault, might be placed on the statute without doing violence to the words which it contains. But if, endeavoring to arrive at the legislative will and intention in the enactment of this statute,—which is in derogation of the rule of the common law, we inquire what was the old law, the mischief which it brought about, and the remedy by which the legislature intended to cure that mischief, we have gone very far toward the solution of the question." Berry *v.* State, 105 Ga. 683, 31 S. E. Rep. 592. In this case Simmons, C. J., Cobbs and Lewis, JJ., concurring specially, said: "We concur in the judgment solely for the reason that we are bound by the ruling made in the case of Mitchell *v.* State, 41 Ga. 527. That case being now under review, in our opinion it should be overruled, in so far as it relates to the question under consideration in the present case."

‡SAME—WHAT CONDUCT WILL JUSTIFY ASSAULT.— "This court at the present term in the case of Mitchell *v.* State, in an indictment for an assault with intent to murder, held that 'the put-

so assailed, without proof of some previous threats, steps away, putting his hands in his pocket, it is an unauthorized presumption of law and fact that he has a concealed weapon, which he is about to draw or use, and that men must act on something more substantial in appearance than this; there must be some definite act, some apparent preparation to draw, and that he has, in fact, a weapon to justify or paliate the commission of violence in the premises, and the pretence of reasonable fears or right of self-defense from acts like this, is an unwarranted pretext, the allowance of which, by Courts, would be to trifle with human life.

5. FACTS SUSTAINED VERDICT.—The facts in this case sustained the verdict.

Criminal Law. Opprobrious Words. Before Judge Clark. Sumter Superior Court. October Adjourned Term, 1870.

· The indictment charged Mitchell with assaulting Charles W. Hancock, on the 25th of October, 1870, with a stick, unlawfully beating him therewith, with intent to murder him. On the 17th of November, 1870, Mitchell moved to continue the cause because of the public excitement against him, which had been kept up by the fact that he was Chief Marshal of Americus, and a heated contest for city officers was on the 25th of October, 1870, and ever since, going on, Hancock being an editor of a paper in said city, and had kept this matter before the public. The motion was overruled.

Hancock testified that on the 25th of October, 1870, as he was going to his office, upon the side-walk, he was stopped by Mitchell and asked why he had called Mitchell a dishonest man. Hancock said he had not done so. Mitchell replied that he had, and asked him what he meant by the article in his paper of that day. Hancock replied that there was nothing in the article reflecting upon him as a man or officer; that the article was intended for the public good, and was general in its application. Mitchell said "You meant that I

---

ting the hand in the pocket by the party when assailed did not justify the assailant in beating him: that it required some act or appearance of drawing a weapon. Men must depend on something more than this, without the assistance of threats. There must be some apparent preparation to draw a weapon; something showing the party in fact, a weapon; something more than imagination or bare fear to justify or palliate acts of violence to the person.' Under this ruling upon examination of the testimony, the fear excited by putting the hand in the pocket was only a bare fear that he migh draw a weapon, or that he had a weapon; but was not sufficient, in itself, to justify the taking of human life." Braswell v. State, 42 Ga. 612.

The defense in a murder trial being that the accused shot and killed the deceased under the fears of a reasonable man that his own life was in danger and there being evidence in behalf of the accused tending to show that immediately before the homicide was committed the deceased, upon provocation by words alone, placed his hand behind him and advanced upon the accused, it was erroneous to reject evidence offered to show that the deceased habitually and notoriously carried a pistol and that this was known to the accused. This is true whether upon the occasion of the homicide the deceased actually had upon his person a concealed pistol, or not. Such evidence is, in such a case, admissible, however, solely for the purpose of determining whether or not the killing was really done under the influence of reasonable fears. Daniel v. State, 103 Ga. 202, 29 S. E. Rep. 767, citing the principal case.

am a dishonest man." Hancock replied, "I meant no such thing." *Mitchell, raising his finger to Hancock's face, said, "The next time you put my name in your paper, by God! I will kill you." Hancock made no reply, but started off. As he turned round, Mitchell struck him heavily with a large stick on the top of his head, and followed it with other blows in quick succession. Hancock fell; Mitchell continued beating him, when some one stopped him, and Hancock left and had his wounds dressed. Hancock had a walking cane in his hand. He denied saying to Mitchell that he was, as a man, responsible for the article. Here the State rested the case.

A man who witnessed the rencontre, testified that Hancock asked Mitchell if his name were in the paper, and he said no, but that he was referred to, because none but he, in the city, had a son in a bar-room; that Hancock said he put the article in as a man, when Mitchell replied that if he did the like again, meddling with his affairs, he would kill him, and shook his finger in Hancock's face. At this juncture, Hancock stepped back (one foot behind the other) and ran his hand into his pocket, and Mitchell grabbed Hancock's right hand with his left, took his stick from his arm with his right hand and struck Hancock. Hancock threw up his left hand, Mitchell caught his collar with his left hand and struck him several blows, when Hancock, backing, fell over a pile of lumber. Mitchell retained his hold, and struck him two blows while he was down, Hancock crying for mercy. Mitchell's stick was caught and he was pulled away by some one while he was beating Hancock. Hancock drew no weapon, and did not offer to fight.

Two other witnesses gave substantially the same account of the rencontre, stating that Mitchell had just read the last article and had gone out on the street and had the crooked-headed stick which he usually carried, and with that struck the blows. The articles published were as follows: "Two young chaps in town, clerks in rival whisky shops, got into a difficulty yesterday and one was dangerously cut with a knife, on the back of the hand and neck, by the other. Parents should not degrade their sons by forcing them into such a business, and it is on them, and not on the boys that this *difficulty should be placed. No father, who desires his son to become a respectable and honest man, will allow him to visit a grog-shop, much less force him to clerk in one against his own wishes. There are honorable employments enough in the land for all to make a good living, and which will not injure the character, though they may harden the hands, that men of judgment had prudence would prefer their sons to work at."

That of the 25th was as follows: "Not to be intimidated in giving publicity to events that transpire in the city, we do so with no intention to cause any one mortification or to in-

Mitchell v. The State of Georgia

jure their business, but as journalists, recording the doings of those around us. But the threats of those who style themselves as bullies, will not deter us from noticing anything calculated to injure the morals of the young men of this city. We regard it in the light of a holy cause to cry down and rid our city of evil and crime; and to do this we must strike at the root and work at it until we can get every good man in the city to join in and help us. And as we know that the most of our citizens have the good of the young at heart, we expect to have all on our side ere long. Truth is terrible in some things, and when it touches the heart of the guilty it is more terrible still. And we will even say that the father must not expect his boy, raised in a grog-shop, to fill an honorable position in manhood. There is not one chance in a thousand for him."

Other witnesses testified to the following facts: One Addison kept a grog-shop, and had his son as clerk. One Chapman kept another close by, and Mitchell's son, about nineteen years old, was Chapman's clerk therein. Young Mitchell, not noticing that his knife was open, playfully threw it at Young Addison, and accidently cut him, they being friendly. After this the first article appeared. Old Addison called on Hancock for an explanation, and Hancock said he meant Mitchell. Addison told his son what Hancock had said; they told young Mitchell and he told his father.

In rebuttal, it was shown that before meeting Hancock, Mitchell was cursing and denouncing him as a pusillanimous *scoundrel and scamp, and saying he had been abusing him all the year, and that if Hancock did not take back what he had said some blows might pass, that he must take it back. They said one of said wounds cut Hancock's scalp about two inches, though none of the wounds were dangerous; that Hancock was unarmed at the time and offered no resistance to Mitchell.

Mitchell made his statement of the affair, but it does not materially change the facts, and, under the statute, is not evidence for him.

When the jury was empannelled and before any evidence was introduced, it being near night, the Judge asked counsel, in the hearing of the jury, if they would consent to the dispersion of the jury, without its being in charge of an officer, and counsel for both sides consented. The Judge then told the jury not to converse with each other about the case nor with others, nor allow others to converse with them about it, and then discharged them for the night. This was all repeated next day at dinner time, while the case was in progress, and that evening, after the argument and charge of the Court were ended. The Court charged the jury as to what was necessary to constitute an assault with intent to murder, of which no complaint is made. He gave in charge the statute as to opprobrious words and said "the law allows this

much to the passions of men, but the battery must follow quickly the words spoken or the language used; if time has intervened, sufficient for the passions to cool and for reason to assert its sway, the law will not justify a battery, no matter how opprobrious the words or language used; the law will not allow or justify a battery on Monday for words spoken or published on Saturday, nor for words spoken or printed on Wednesday, if there had been time between the reading of them and the assault, for the passions to cool; nor will the law justify a battery in any case for words written, printed or spoken, unless the words are opprobrious or insulting; nor will the law justify a battery for words spoken or written at several different times during the year. If the beating was excessive and beyond the provocation, the law will not justify it even *when the words spoken or written were opprobrious and insulting. If the beating was with a heavy stick and excessive, beyond the provocation, it will be your duty to find defendant guilty of assault and battery."

If Mitchell, in a threatening manner, said to Hancock, "G—d d——n you! if you put my name in your paper again, I'll kill you," and Hancock retreated and put his hand in his pocket, the putting the hand into his pocket did not justify the beating. Mitchell would have been justified in striking only when Hancock endeavored to draw a weapon or made pretense of drawing a weapon; but if he struck before any effort or show of drawing a weapon had taken place, and struck because he put his hand in his pocket, he is guilty of assault and battery. If, from the evidence, Mitchell, at the time of striking, was under the fear of a reasonable man that Hancock was manifestly intending to commit a personal injury upon him, amounting to felony, then the jury must acquit Mitchell. If Mitchell claims that he struck in self-defense, he must show really and in good faith that he did it in self-defense, to protect himself from an effort by Hancock to do him bodily harm, and he must have waited until it became necessary to strike in self-defense, which could not be until Hancock had undertaken to draw a weapon. If he struck before this time, he is guilty of assault and battery. The case would be aggravated if Mitchell, by insulting language and threatening words, provoked Hancock to some show of resistance, and immediately beat him with a stick. If Mitchell said he could stand it no longer and took his stand in the street, with a view of assaulting Hancock, and did assault and beat him, all claims of self-defense should be scrutinized with great caution and care, and the jury should be well satisfied that he did strike in self-defense before they allow that plea." He was requested to charge that saying "I put the publication in the paper as a man, and am responsible for it." amounts to the same thing as though the words had been then repeated, but he refused so to charge.

Mitchell was found guilty of assault and battery. His counsel moved for a new trial upon the grounds that the Court erred in refusing a continuance; in asking them to consent to the dispersion of the jury, as aforesaid; in charging as he did and in refusing to charge as requested, and because the verdict was contrary to law and evidence. The new trial was refused, and error is assigned on each of said grounds.

(Note.—The consent of counsel to the correctness of the brief of the evidence was not certified. Upon a suggestion of a diminution of the record to supply this, it was admitted to be correct, and the case proceeded).

Fort & Hollis, N. A. Smith, for plaintiff in error.

Jack Brown, C. T. Goode, W. A. Hawkins, for the State.

LOCHRANE, C. J.

The record in this case shows that the plaintiff in error was indicted for an assault with intent to kill, that he moved to continue the case upon the ground of public excitement against him, which was overruled, and the evidence introduced. During the progress of the trial the Judge asked counsel, in the presence of the jury, if they would consent to the jury dispersing. This inquiry was made twice and assented to, the jury separating; and the last time prisoner's counsel objected, and the Court did not allow the separation. After the charge of the Court the jury found a verdict of guilty of assault and battery.

Error is assigned on the overruling a motion for a continuance, upon the Court's inquiry relative to the consent of the jury dispersing, upon the refusal of the Judge to charge as appears by request of prisoner's counsel, upon the charge given by the Court, and upon the Judge's refusal of a new trial on the ground that the jury found contrary to the law, evidence, weight of evidence, and without evidence, and against the charge of the Court.

In presenting the judgment of the Court in this case, we *shall follow the assignment of errors, briefly disposing of them in their order.

1. This Court has laid down the rule relative to continuances upon the ground of public excitement. And we do not believe that there is anything in this case that justified the Court in changing the practice now established. Our jury system is peculiarly free from the apprehension of unjust prejudice or passion controlling the judgment of juries empanelled. The statutory questions, as well as general principles of law, prohibit any inimical influence to the party accused passing the searching review of the Court; opinions entertained or expressed, as well as bias or prejudice, are scrutinized, and we do not see that excitement, outside the Court-house, can well reach the counsels of those entrusted to try the case. It is true that crimes which shock

and startle the peace of society, may invoke, in every community, an upheaval of popular indignation. It is natural they should. But with the precautions the law has made in selecting jurors, we cannot hold that prisoners shall be entitled, from the very enormity of their acts, to wait a change of public sentiment before they are held to answer.

2. In the matter of the Court asking the prisoner's counsel if they would consent to a separation in the presence of the jury, we can realize the injustice in the manner of the request, but considering the law as laid down by this Court, 10 Georgia, 511, we do not think, no matter how much we may feel disinclined to sanction the practice, that it is an error of law upon the part of the Judge to make the inquiry, or if consented to and there is no charge of unjust interference with the jury, that the act constitutes a ground for a new trial. The proper rule is, that the Court is called upon simply to administer the law, and he ought to confine himself to the naked discharge of his official duty. In cases when application is made by counsel on both sides to permit the jury to disperse, he has the right, in his discretion, to grant it; and in ordinary cases there would be no injustice to the State or accused in doing so. But we can readily conceive cases where the Judge, even in lighter grades of offense, should not expose *the jury, after they are charged with the consideration of the case, to disperse; for intermingling with the crowd is, to say the least, an opportunity, if not an invitation to covert attack upon the purity of their verdict. It is a practice this Court has always discouraged by its counsel, where even consent to it has deprived the Court of setting aside the verdict.

3. The next question arises upon the refusal of the Court below to charge that saying, "I put the publication in the paper as a man, and am responsible for it," amounts to the same thing as if the words had been there repeated. The assault and battery in this case originated in relation to certain publications which appeared in the Sumter Republican, a newspaper published at Americus, upon Mr. Hancock the editor. And the charge under review, which was refused by the Judge, was based upon that section of our Code which declares: "On the trial of any indictment for an assault or an assault and battery, the defendant may give in evidence to the jury any opprobrious words or abusive language used by the prosecutor; and such words and language may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury." This charge could only have been given by the Judge upon the basis of the presumption on which the request is predicated, to-wit: that the saying, "I put the publication in the paper," etc., was in effect a repetition of the words to the party, so as to come within the provisions of the Code just recited. In our judgment the charge was properly refused.

It was objectionable as requiring the Judge to state as a fact proven what was a matter of denial in this case, and besides, it went further and invoked the Court to hold, by such charge, that the words amounted in law to the same thing as if then and there uttered in the presence of the accused.

The provisions of the law on this subject are somewhat peculiar, and we have considered the question closely to catch the spirit and intent of the legislation, and feel satisfied that the statute means only such cases where the opprobrious words are spoken to the party, which in their nature *and manner of utterance, are supposed to arouse the passions, and justify (under certain circumstances to be adjudged by the jury) instant and appropriate resentment, not disproportioned to the provocation.

We realize the necessity of the inquiry by matters being published, thus scattering it wide-cast through the community. But to authorize such publications to be regarded as sufficient provocation to authorize the injured party to take the law of redress in his own hand, and to place them on the same footing with opprobrious words spoken in the presence of the party, and justifying an assault and battery under the Code, would be to license crime and uproot the settled principles of public justice.

In relation to the charge given, we see no error in the construction given to the section of the Code 4597, nor in that portion of his charge relative to what transpired at the time of the beating. It appears that Mitchell, the plaintiff in error, had a son in a bar and restaurant. The articles considered offense indulged in strictures on the character of the employment. No names were mentioned, but facts as well as proof in this case, pointed what was said to Mitchell. The second article about which this difficulty arose more particularly, appears to have been written with a general intent, and disclaimed personal reference. The articles proved are, in the main, homilies upon temperance and the evils of early training in bar-rooms, and did not, in our opinion amount to opprobrious words or anything analogous thereto.

4. After the publication of the second article Mitchell met Hancock. Mitchell's language was significant of the highest degree of anger. Hancock was peculiarly mild, Mitchell lifted his finger towards Hancock's face. Hancock stepped back, putting his hand in his pocket Mitchell took hold of his wrist and struck him over the head with a stick some heavy blows. He either fell from their effect or stumbled over some wood and fell, and, when down, Mitchell still beat him, and all the while he was imploring mercy. We find nothing said or done by Hancock at the time to envoke such unnecessary and unmerciful beating, and the Judge's charge, *"that Mitchell would have been justified only when Hancock endeavored to draw a weapon or make pretence of drawing one, but if he struck before any effort or show of drawing a weapon had taken place,

and struck because he put his hand in his pocket, he is guilty of assault and battery," is, in our judgment, a correct presentation of the law of the case. And we lay the law down on this subject broadly, that when a man goes to another to assail him or demand explanations, or in anger, and the party puts his hand in his pocket, it is an unauthorized presumption that he has a concealed weapon that he is about to draw and use. Men must depend on something more substantial, even in appearance, than this without the existence of threats proven in such case. There must be some definite act, some apparent preparation to draw, something showing the party has in fact a weapon, something more than imagination or bare fear to justify or palliate the commission of acts of violence on the person. Laws were made to protect good men and punish bad ones, and such is the construction Courts will give them.

The error alleged is predicated upon the principle of the law of self-defense which embraces acts tending to excite the fears of a reasonable man, etc. We do not think that, under the law or the facts of this case, the charge of the Judge went further than was proper. The pretext of taking life under reasonable fears has been refined to a subtlety of sentiment not contemplated by the law, and with which this Court has no sympathy. The verdict of the jury in this case could have been under the law and facts only what it is.

In conclusion, we may remark: The press in its general guarantees of freedom should rise to the dignity of its high duty, neither unjustly praising its favorites or abusing its opponents, and while in the exercise of its prerogatives the law puts no limits, it can repress its abuse. The citizen assailed in its columns is not authorized to take the law into his own hands and violate the rights of society by disturbing the public peace. He is only remitted to the processes of suit or prosecution, and must look to the Courts for redress of wrongs. And the plaintiff in error in this case, if he had *invoked the law, and any articles defamatory of his character had, in fact, been published, would have found that the Courts were open and the law was ample.

Let the judgment of the Court below be affirmed.