### SMITH *v.* STATE, 39 Miss. R., 521.

#### ASSAULT.

An assault is any attempt or offer with force or violence to do a corporal hurt to another, whether from malice or wantonness. Roscoe's Ev., 257. The offer or attempt must be intentional. If it can be collected that there was not a present purpose to do an injury, it is not an assault. Wharton's Am. Cr. Law, 1244.

A mere purpose to commit violence, however plainly declared, if not attended by an effort to carry it into immediate execution, falls short of an actual assault. HANDY, J., *dissented.*

When an unequivocal purpose of violence is accompanied by any act which, if not stopped or diverted, will be followed by personal injury, the execution of the purpose—the battery is attempted.

Error to Yalobusha circuit court. COTHRAN, J.

*F. M. Aldridge,* for plaintiff in error.

The instructions asked by the defendant, and refused, are based upon the idea that there must have been an intent to commit a battery. The point upon which the question turns is the intent or purpose of the party charged with the assault. The

court below entertained a different view of the case, and refused to give the third instruction asked for the defendant, " That no threat of words or act can constitute an assault, if the jury believe there was no intention to strike."

The law sustains every instruction asked by the defendant. " The act must amount to attempt ; for a purpose to commit violence, however fully indicated, if not accompanied by an effort to carry it into immediate execution, falls short of an actual assault." State v. Davis, 1 Iredell, 128 ; Wharton Am. Cr. Law, 461.

*T. J. Wharton,* attorney general.

In support of the action of the court, cited Wharton Am. Cr. Law, 311, 313 ; State v. Morgan, 3 Iredell, 188, 189.

In the last case Judge Gaston said : " The inquiry was, whether there was a present purpose of doing harm ; if not, the acts did not amount to an assault." Again, noticing cases cited by counsel, he said : " But these, and all the cases in our recollection where the doctrine has been held, were cases in which there was a declared intention *not* to do harm *at the time.* The present case is one of a different character. The act was not only apparently a most dangerous assault, but accompanied with a present purpose to do great bodily harm ; and the only declaration by which its character is attempted to be changed is, that the assailant was not determined to execute his savage purpose unconditionally, and without a moment's delay. He had commenced the attack, and raised the deadly weapon, and was in the attitude to strike, but suspended the blow to afford the object of his vengeance an opportunity to buy his safety by compliance with the defendant's terms." " To every purpose, both in law and in fact, the attack was begun, and in the pause before its consummation, an arrangement was made which prevented a probable fatal result." He concludes the examination by saying : " Whenever the act is done in *part execution* of a purpose of violence, whether absolute or provisional, it makes no difference as respects the question whether the act be an assault ; in both he equally violates the public peace."

" An assault is committed whenever a well-founded appre-

hension of immediate peril from a force already or fully put in motion is created." 1 Bishop Cr. Law, 409. See also 1 Iredell, 125, 375; 11 ib., 475; 9 Ala., 79.

The offense was completed when the prisoner told the witness that he would cut his throat if he did what the law required him to do—execute legal process. That the accused afterwards relented did not atone for the violation of the law, or the injury done to the officer innocently discharging his duty.

SMITH, C. J.:

This was a conviction for an assault, in the circuit court, Yalobusha county.

The defendant pleaded not guilty; and, on the trial, it was proved by the only witness examined in the cause, that he went to defendant's house to levy an execution, and when he arrived there, that he found defendant at the grindstone, grinding his knife. When the witness made known the purpose of his visit, the defendant swore he should not levy the execution, and threatened, if he did, to cut his throat. Witness leaned up against the fence in a careless manner, and defendant walked up to witness in an angry manner. In talking to witness, defendant kept his knife open, speaking in an angry and excited manner, and flourishing his knife, which sometimes passed within six inches of witness' throat. Witness stood motionless, and shamed defendant, and told him that he was a better man than witness, and that defendant put up his knife, but soon took it out again. Witness, for the time, was prevented from making the levy; but defendant's anger subsided after awhile, and he made the levy, and defendant rode off with him to a neighbor's house. Witness did nothing to prevent defendant from striking him, if he desired to do so. Witness did nothing but talk to defendant. Defendant and witness were the only persons present. Defendant did not touch witness, who did not retreat, but stood still.

The errors assigned arise upon the instructions granted, with reference to the foregoing evidence, in behalf of the prosecution, and upon those which were requested by the defendant, and refused by the court.

For the prosecution, the court charged, first, that " If the jury believe, from the evidence, that the defendant, in an angry manner, drew a deadly weapon, and approached Wilson, and, while in reach of him, threatened to do him damage, if he did not desist from doing a lawful act, and that Wilson did desist, for the time, in consequence of such threat, the defendant being armed with and exhibiting such weapon, then the defendant is guilty of an assault; " and second, " That to constitute an assault, it is not necessary that any damage be done, or that any blow be struck."

And refused, in behalf of the defendant, to instruct the jury, first, that " If it was not the intention of the defendant to strike, then no assault was committed; " second, " If it was in the power of the defendant to strike, and he did not strike, nor make any attempt to strike, these are circumstances to be considered by the jury to determine whether there was any intention to strike; " and, third, " No threat of words or act can constitute an assault, if the jury believe there was no intention to strike."

These latter instructions are the converse of those given at the instance of the prosecuting attorney, and, in effect, present the question whether a present purpose or intention to do harm to another is necessary to the constitution of an assault.

An assault is said to be " any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness." Roscoe Ev., 257. The offer or attempt must be intentional; for if, notwithstanding appearances to the contrary, it can be collected that there is not a present purpose to do an injury, it is not an assault. Wharton Am. Crim. Law, 1244, 4th ed. And it is said that a mere purpose to commit violence, however plainly declared, if not accompanied by an effort to carry it into immediate execution, falls short of an actual assault. Hence no words of themselves can amount to an assault. Davis v. The State, 1 Wendell, 125; Wharton Am. Crim. Law, 1244. As no words of themselves, or a declared purpose to do an injury to the person of another, unaccompanied with an effort to carry such purpose into immediate effect, amounts to an actual assault, it is not always easy, in practice,

to draw a dividing line between violence threatened and violence begun to be executed. But we think it may safely be laid down, " that when an unequivocal purpose of violence is accompanied by any act which, if not stopped or diverted, will be followed by personal injury, the execution of the purpose is then begun—the battery is attempted."

Tested by these rules, it seems very clear that the rulings of the court were erroneous. The acts or gestures of the defendant were not an evident attempt to commit violence upon the person of Wilson. It appears certain that he did not so regard them, as he leaned carelessly against the fence, offered no resistance, and did not retreat, when it was completely in the power of the defendant to have executed his purpose if he intended to assail him. Under the circumstances in proof before the jury, it was indispensable that they should ascertain what was the intention of the accused. If the proof was clear, or the jury had been satisfied that the accused, at the time, meditated violence upon the person of Wilson, they would have been justified in finding that his acts amounted to an assault. But the instructions excluded from their consideration all of the facts and circumstances in proof before them, and which were relied upon to show that the accused did not intend to commit an injury upon the person of Wilson, and hence that he was not guilty as charged.

Judgment reversed, and cause remanded for a new trial.

HANDY, J., dissenting:

I do not concur in the doctrine stated in the opinion of the court.

I am of opinion that if a party make an *advance* upon another armed with a dangerous weapon, likely to produce great bodily injury, and in a hostile attitude, to all appearance indicating an intention to do the other party great bodily harm, that it is in law an assault, though the party did not *intend* to do the party any bodily injury.