26 313<br>123 642<br>f124 598

### No. 3297.

### JOSIAH B. RICHARDSON v. JAMES E. ZUNTZ.

Mere words spoken, however much they may be calculated to excite and irritate, do not justify an assault and battery. The law, in deference to human infirmities, concedes something in favor of an accused party, where it is shown there was great provocation, and in civil actions such provocation may go in mitigation of damages, but never in justification of the unlawful act.

APPEAL from the Fifth District Court, parish of Orleans. *Leaumont,* J. Jury trial. *L. A. Sheldon* and *Henderson, Hornor & Benedict,* for plaintiff and appellant. *A. A. Atocha,* for defendant and appellee.

TALIAFERRO, J. The petition alleges that the defendant on the ninth of July, 1869, made an assault upon the plaintiff with great violence and struck and beat him upon the head, neck, arms and other parts of the body with a heavy cane or stick, causing great bodily injury and pain, rendering him incapable of pursuing his ordinary business occupation and causing him great expense for surgical aid and attention necessary from the disabled condition into which he was thrown by the injuries inflicted upon his person by the blows received from the defendant. For this alleged violence and consequent injuries, suffering, loss of time from his business affairs, and expense of medical and surgical aid, he prays judgment in damages against the defendant for $25,000.

The answer is a general denial.

The case was twice tried in the court below, and each time before a jury. Each trial resulted in a verdict of the jury in favor of the defendant.

The plaintiff prosecuted this appeal.

From the evidence we deduce the following state of facts: On the day of the occurrence of this assault the defendant took from the

banking house of Samuel Smith, at the corner of Camp and Common streets, a heavy cane containing a dangerous weapon, and started with it along Common street down towards St. Charles street, in the direction of the office or place of business of the plaintiff. A friend of the defendant knowing his purpose followed him, fearing bad consequences might result if a rencontre ensued while the defendant held this dangerous weapon, and overtaking him before he reached the plaintiff's room on St. Charles street, took the weapon from him, and gave him in place of it a stick or cane about three-quarters of an inch in diameter. With this cane he walked into the house where the plaintiff had a room in the second story and awaited the coming down stairs of the plaintiff. The defendant himself says in his own testimony that he went up stairs after the plaintiff, and the plaintiff hid himself. At the foot of the stairs when the plaintiff came down the defendant made the attack, striking the plaintiff several violent blows about the head and shoulders, as well as on the other parts of his body. The plaintiff had no weapons of any sort, and made no resistance other than throwing up his arms to ward off the blows. He succeeded in getting out upon the banquette and ran in the direction of Canal street. The defendant pursued, and at a short distance beyond the Southern Bank they were seen struggling for possession of the cane, the plaintiff having seized one end of it. At this juncture the defendant drew a pistol and threatened to shoot the plaintiff if he did not let go the cane. The latter thereupon let go his hold on the cane, and as the former was about to strike the plaintiff, two of the witnesses on the spot cried out, "that's enough," and the affair ended. The plaintiff was severely but not dangerously hurt. He bled profusely from the blows inflicted, was removed to his boarding house, and was under the care of a surgeon for about ten days, five of which he was confined to his room.

That the verdicts rendered by the juries in this case are clearly unwarranted by the evidence there can be no doubt. The judge a quo so believed, for in his refusal to grant a new trial after the second verdict was rendered, he said : "Being of opinion that the verdict in this case is erroneous, but the ends of justice requiring the motion to be overruled, this case having been twice tried by different juries with the same result, it is ordered that the rule be dismissed."

Here is a case in which a party, no doubt believing himself to have been traduced by another, and was greatly provoked and incensed against him, states himself that "for the threats he made I intended to chastise him, and I did chastise him. I did it for perjury also. He perjured himself and published lies and tried to levy blackmail." To inflict punishment with his own hands upon the plaintiff was a deter-

Richardson v. Zuntz.

mination of the defendant deliberately formed and deliberately exe-
cuted. In doing this he violated law, because he is not permitted to
be his own avenger. The law gives redress for injuries such as the
defendant complained of against the plaintiff, and he was at liberty to
invoke the law for redress. He could legally resort to no other means
to have the offender punished, and if he did, he became himself a
transgressor of the law. It is plain to see the evil consequences that
would result from permitting every man to judge of the kind and
quantum of punishment that should be inflicted upon those whom he
might accuse of having done him wrong. It is one of the great under-
lying principles of organized society that each of its members waives
any natural right he might have had to be the judge of his own griev-
ances and to be the vindicator of his own wrongs, by conceding that
right to the State, a power wiser than himself, to determine the char-
acter of the injuries he may have to complain of, and abler than him-
self to vindicate his wrongs. This principle, founded in reason and
philosophy, equalizes the strong man with the feeble one, and is in-
tended to afford protection alike to every one in his person and prop-
erty, to insure peace and order in the community, and to promote
justice among men by securing every one in his rights, and punishing
offenders by the infliction of penalties proportionate to their offenses.
Outrage, wild disorder and crime would become dominant in the land
if every man were left free to be his own judge and executioner. A
bad man influenced by malice might beat, wound and ill treat his
neighbor upon an accusation utterly false. A good man might do the
same thing from the mistaken belief of having sustained an injury that
in point of fact was wholly imaginary. Deplorable indeed would be
such a state of things, and to avoid it society was organized and laws
established.

Mere words spoken, however much they may be calculated to excite
and irritate, do not justify an assault and battery. The law, in
deference to human infirmities, concedes something in favor of an ac-
cused party, where it is shown there was great provocation, and in
civil actions such provocation may go in mitigation of damages, but
never in justification of the unlawful act.

In the case before us some proof was adduced that the plaintiff had
endeavored, a short time before the attack was made upon him, to pro-
cure a pistol for the purpose of attacking the defendant; but it is
plain from all the evidence that he drew no pistol on the occasion, and
it is not pretended that he had one on his person during the time the
defendant was beating him. It seems from the testimony that he did
not assume the attitude of a combatant, but that his purpose was to
escape from the defendant, and that he made no defense, other than by

throwing up his arms to ward off the blows aimed at him, and by grabbing at his assailant and at the cane he was using to shield himself from the violence used by the defendant. From the blows received, the plaintiff, there is no doubt, suffered bodily pain to a considerable extent, although no permanent injury resulted. It is also apparent that he suffered pecuniarily as well as from the sense of degradation which such an infliction, whether justly or not, seems to imply. All this proceeded from the unlawful act of the defendant. We think $500 damages should be awarded the plaintiff.

It is therefore ordered that the judgment of the district court be annulled, avoided and reversed. It is further ordered that the plaintiff recover from the defendant $500 as damages, and that the defendant pay costs in both courts.

WYLY, J., *dissenting*. "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Revised Code, article 2315. Under this law the plaintiff sues for the damages which he alleges he sustained by reason of the assault and battery which the defendant inflicted on him. It is probable from the beating which he received that the plaintiff suffered some damages, but the quantum thereof is not proved by any positive evidence. I do not think he ought to recover judgment against the defendant, requiring him to repair a damage, the amount of which is not proved.

It is urged, however, that a wholesome regard for the principles lying at the foundation of civil government requires us to impose vindictive damages in a case like this, where the defendant took the law into his own hands and sought to avenge what he considered his own wrongs.

To repress offenses of the kind at bar there are two remedies; one a criminal prosecution to vindicate public justice, and the other a civil action for the reparation of the damages suffered by the party upon whom the injury or public wrong was inflicted.

Whether the defendant has suffered the penalties for breaking the law in a criminal prosecution, does not appear. In my opinion vindictive damages are only penalties for violating the law, and they ought not to be imposed in this case, because criminal punishment can not be inflicted in a civil action. This question was elaborately discussed in the case of Black *v.* Carrollton Railroad, 10 An. 37, and the dissenting opinion of Chief Justice Slidell I regard as the true exposition of the law. I will not pursue the argument, however, because I believe the reasoning and authorities cited by Chief Justice Slidell are conclusive of the question.

But the main objection I have to the conclusion of my associates in this case is, they impose a penalty of $500 on the defendant after the case has been twice submitted to a jury, and each time their verdict has been in favor of the defendant. Twenty-four jurors of the vicinage have considered the question of damages submitted to them in this litigation, and they have unanimously agreed that the plaintiff has no cause of complaint. Besides, on examining the evidence, I find no proof as to the amount of damages sustained by the plaintiff.

I maintain, therefore, that the finding of the jury is not manifestly erroneous, and that their verdict ought not to be disturbed.

"The jury are the legitimate judges of the quantum of damages, in assessing which the law leaves them much discretion. Their verdict will be generally sustained, unless excessive or unsupported by the evidence, when the case will be remanded." See authorities collated in Hennen's Digest, page 1061, section 2.

If the defendant has damaged the plaintiff, he has the right to have the amount thereof assessed by a jury, and if their finding is not supported by the evidence the case should be remanded. I have not lost all confidence in the juries of the country, and I believe if the plaintiff can not satisfy a jury that he has been injured, he should have no relief.

I therefore dissent in this case.

Rehearing refused.