## BERRY *v.* THE STATE.

1. It is the province of the court to construe the law applicable in the trial of a criminal case, and of the jury to apply the law so construed to the facts in evidence. While the impaneled jurors are made absolutely and exclusively judges of the facts in the case, they are, in this sense only, judges of the law.

2. The opprobrious words or abusive language which may, under the provisions of our code, be given in evidence as a justification for an assault, or an assault and battery, are such as are used by the person assaulted or beaten, to the accused, at the time of the assault or assault and battery.

SIMMONS, C. J., COBB and LEWIS, JJ., concurring specially. We concur in the judgment solely for the reason that we are bound by the ruling made in the case of *Mitchell* v. *State*, 41 *Ga.* 527. That case being now under review, in our opinion it should be overruled, in so far as it relates to the question under consideration in the present case.

Argued October 3, — Decided October 17, 1898.

Indictment for assault and battery. Before Judge Candler. Fulton superior court. March term, 1898.

*J. T. Pendleton* and *R. R. Arnold,* for plaintiff in error.
*C. D. Hill, solicitor-general,* contra.

LITTLE, J.   John D. Berry was indicted by the grand jury of Fulton county for the offense of assault and battery upon the person of O. H. Stein.   The indictment charged that the battery was done with a bottle.   On the trial of the case the evidence showed that the plaintiff in error attacked Stein in the dining-room of the Kimball House, and it tended to show that at the time the assault was made, Stein was at a table reading a paper; that the plaintiff in error approached him, leaned over, got a bottle from the table and struck him, felling him to the floor, etc.; and that two or three blows were stricken by the plaintiff in error.   A witness also testified that the plaintiff in error struck Stein with a pistol.   When persons present interfered, plaintiff in error desisted, and left the room.   In his statement the plaintiff in error stated that Stein was in charge of a paper in the city of Atlanta, known as "The Looking Glass"; that in this paper Stein had repeatedly made publications in relation to his official and personal conduct; that some time previous to the assault, he had published an article severely criticizing the plaintiff in error, charging him with gaming, etc.; and holding the plaintiff in error up to ridicule and contempt before the public in relation to other matters; that the article contained things which were not true, and that the attack on him was such as to indicate a personal malevolence.   He stated that he had not seen Stein but once before, since the articles appeared, and that on the night in question Stein looked at him with an insulting leer and an iniquitous grin, and by these things called his attention to the article which he had written; that he immediately walked around to the side of Stein and put his hand on his shoulder, and the assault then occurred; and that he thought he was justified in doing what he did.   Under the charge of the court, the jury returned a verdict finding the defendant guilty.   He moved for a new trial, which was overruled, and he excepted, and made a number of assignments of error, among them, the refusal of the court, at the trial, to admit in evidence on behalf of the defendant a copy of an article written and printed by Stein previous to the assault and commission of the battery, which it was alleged contained opprobrious words and abusive language of and concerning the defend-

ant; the refusal to charge the jury that if they believed the person assaulted, on a recent occasion, not in the presence of the defendant, had written and published an article in a public newspaper in which he used opprobrious words and abusive language of the defendant, which was communicated, and the battery was appropriate and not excessive, the defendant would not be guilty; also error in charging the jury in language to the effect that it was immaterial what might have been published in a newspaper; that the justification of an assault and battery, by the proof of the use of opprobrious words or abusive language used by the person assaulted, refers to words used in the presence of the assaulting party, and does not apply to words written or published in a newspaper; in charging the jury in language to the effect that the jury are the judges of the law as given by the court; and in refusing to charge: "The jury are not only judges of the facts, but of the law. If you differ with the court as to the law, you are exclusive judges of the law." We have not attempted to set out the assignments of error in full. They raise only legal questions which this brief summary sufficiently indicates. The ground of the motion which seeks to set aside the verdict as being contrary to law and the evidence in the case, was properly overruled by the trial judge. The legal questions raised by the motion for a new trial are two: 1st. In what sense does the law make the jury judges of the law and the facts in the trial of a criminal case? 2d. Are the opprobrious words or abusive language which, under the provisions of our code, may be given in evidence as a justification for an assault or assault and battery, such words as are used to and in the presence of the person assaulting, or may such words or language as have, previously to the assault, been written and published in a newspaper, be given in evidence by the defendant as a justification?

1. As early as the case of *Anderson* v. *State,* 42 *Ga.* 9, this court held, that under a proper interpretation of the law, the jury " were the judges of the law and the facts, so as to enable them to apply the law to the facts, and bring in a general verdict, but they had no right to make law; the law was laid down in the code; it was the province of the court to construe the law

and give it in charge, and of the jury to take the law as given, apply it to the facts as found by them, and bring in a general verdict." Previous to that time it had been held that the jury were the judges of the facts and of the law; but that decision gave a different interpretation of the law as to the power of juries to judge of the law applicable to a case on trial, and the charge of the judge was in accord with the ruling there made. This has been followed, without exception, since the case of *Anderson*, and is now the settled law of this State; and there was no error committed by the court in charging as set out in the ground referred to, and in refusing to charge as requested on this subject.

2. The plaintiff in error alleges that the court erred in refusing to admit in evidence an article written and published by Stein in a newspaper previous to the assault, criticizing him, and containing, as alleged, opprobrious words and abusive language of and concerning the plaintiff in error; and erred in refusing to charge that the defendant would not be guilty if the battery inflicted by him was occasioned by the publication of such article in a public newspaper. Section 103 of the Penal Code contains the following language: "On the trial of an indictment for an assault, or an assault and battery, the defendant may give in evidence to the jury any opprobrious words, or abusive language used by the prosecutor, or person assaulted or beaten; and such words and language may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury." It is contended for the plaintiff in error that under this provision of law, it was his right to submit to the jury evidence of any opprobrious words or abusive language which had been written and printed of him by Stein previous to the difficulty, that such words and language might be considered by the jury, who were authorized to find, if they so thought, that they amounted to a justification of the assault and battery, the commission of which, as charged, was, on the trial, virtually admitted. It is not contended that at the time the battery was inflicted Stein used any opprobrious words or abusive language. This exact question has heretofore been before this court in the case of *Mitchell* v.

*State,* reported in 41 *Ga.* 527, and the interpretation we give to this statute has been recognized as the law governing and restricting the admission of opprobrious words and abusive language, as a justification of an assault or assault and battery, to such as are used in the presence of the party assaulting, for many years unquestioned. In the case referred to, this court said that " the statute only embraces such cases where the opprobrious words are uttered in the presence of the party, which, in their nature, are supposed to arouse the passions, and justify, under certain circumstances to be adjudged by the jury, instant and appropriate resentment, not disproportioned to the provocation." On the argument of the present case, counsel for the plaintiff in error, under the rule, asked leave to review the decision in that case, which was granted; and we are now called on to determine whether we shall reverse the ruling there made, and hold the contrary proposition to be the law. On this question the present bench stands equally divided in opinion, and as, under the statute, in order to reverse a previous ruling of this court, made by three judges, the concurrence of five of the members of the court is required (Acts 1896, p. 44), the ruling made in the *Mitchell* case, supra, must still stand as the interpretation which this court puts upon the statute in question. Mr. Justice Lumpkin, Mr. Justice Fish and myself agree, that if we take the words of the statute as they stand, alone, and read them literally, a construction which will admit in evidence printed or published words of abuse, antecedent to the assault, might be placed on the statute without doing violence to the words which it contains. But if, in endeavoring to arrive at the legislative will and intention in the enactment of this statute,—which is in derogation of the rule of the common law, we inquire what was the old law, the mischief which it brought about, and the remedy by which the legislature intended to cure that mischief, we have gone very far toward the solution of the question.

It can not be gainsaid that it is a well-recognized principle of criminal law that mere words or menaces do not, of themselves, constitute an assault. 63 N. C. 15; 43 Mich. 521; 39 Miss. 521. If this proposition be true, then one who makes an assault and beats another for words or menaces can not claim that the

same was done as a defense; for it is the rule of the common law, as well as of nearly all the States of the Union, that mere threatening language and abusive words, however violent in character, unaccompanied by any overt act of hostility, can not be a legal provocation for assault and battery. Cushman *v.* Ryan, 1 Story (U. S.), 100; 71 Ala. 481; 16 Ill. 539; 137 Ill. 325; 90 Ind. 143; 21 Iowa, 65; 26 La. Ann. 313; 90 Mo. 54; 39 S. C. 151; 29 S. W. Rep. 1094 (Texas); 64 Vt. 212; 30 Wis. 216.    It must therefore be conceded that if in any case threatening language, or threatening and abusive language, is a defense to a charge of assault and battery, the defense must rest upon other considerations than the defense of one's self and the protection of one's person.    There are two States, and only two, so far as we have been informed, which by statute have changed this rule of law.    These States are Georgia and Alabama.    Section 4345 of the Code of Alabama declares that "On the trial of any person for an assault, an assault and battery, or an affray, he may give in evidence any opprobrious words or abusive language used by the person assaulted or beaten, at or near the time of the assault or affray; and such evidence shall be good in extenuation or justification, as the jury may determine."    In construing this statute the Supreme Court of Alabama, Somerville, J., delivering the opinion, in Brown *v.* State, 74 Ala. 42, says: "This section must be construed in the light of the common law, which never permitted mere words to justify a blow upon the person using them.    As expressed by an ancient common-law writer, no words whatever could amount to an assault.    1 Hawk. P. C. p. 110, § 1.    The purpose of the statute under consideration was to modify this rule, so as to remit the whole matter to the determination of the jury, who are permitted, in cases of this nature, to justify or extenuate the conduct of one who strikes another under the influence of passion engendered by insulting language, when used at or near the time of the difficulty or affray.    This was a concession to the weakness of human nature when fired by the heat of passion."    It will be noted that the words of the Alabama statute confine the evidence to opprobrious words or abusive language used by the person assaulted at or near the time of the assault.    Section 103 of the Penal Code

of this State is different only in the fact that the Georgia statute, while permitting the defendant to give in evidence opprobrious words or abusive language, does not in terms confine such language to a period of time at or near the time of the assault; but the undoubted cause of the enactment of the statute was, as said by Judge Somerville in relation to the Alabama statute, a concession to human weakness when fired by the heat of passion. It must therefore be concluded that in making this departure from the common law, the legislature of Georgia intended to provide a measure of protection for one who, when excited by passion aroused by abusive language, assaulted the user of such language; provided that the battery inflicted was not disproportionate to the provocation which aroused the passion. This is not the only case in which our law recognizes, and to a certain extent excuses, acts of violence which are the result of passion. But wherever it does so, care has been taken to provide that there must be a just cause for the passion. As an instance, provocation by words, threats, menaces, or contemptuous gestures will not reduce a homicide from murder to manslaughter. Such words or menaces may justly excite passion, but if, under the influence of that passion, one kills another, there is no justification and no mitigation. The passion, therefore, which justifies, or, more properly, mitigates the offense, must arise from such circumstances as are serious in their nature, and against which a man's reason is not expected to prevail. While words and gestures are not sufficient to reduce the grade of homicide, although they provoke a passion, yet a passion which is aroused by an attempt to commit a serious personal injury less than a felony, or circumstances equivalent to this, will reduce the homicide to voluntary manslaughter. Again, under our law, in order to reduce the grade of homicide, the act must be done as the result of a *sudden,* violent impulse of passion; and it is declared that if an interval elapses between the provocation and the homicide which is sufficient for the passion to subside and for reason and calmness to resume their sway, the passion will afford no excuse. Therefore, however just the law may be to protect one who acts on the impulse of passion, no protection can be afforded unless the circumstances which arouse the passion are

grave and serious, and from these circumstances passion suddenly results in a manner supposed to be irresistible.    But if time has elapsed, whether the passion has in fact continued or not, the person committing the offense is not protected by the law; because the passion is not sudden, and ought, in reason and with due deference to the weakness of human nature, to have subsided.    In the light of these provisions of law, we must construe the section of the code invoked by plaintiff in error.

· It has been urged upon us that when one prints and sends forth to all the world opprobrious words and abusive language of another, it is sufficient to arouse.passion; that if such words do not amount to a libel, the person written about has no redress; and that the spirit of the statute under consideration will allow one, after time has elapsed, on the occasion of meeting the author of the publication, to give him a deserved chastisement. The reply is, that there is no principle of law which recognizes the indulgence of a spirit of revenge or tolerates the practice of the lex talionis, whether the wrongs be fancied or real. The underlying principle of the criminal law is protection; and while that law excuses to a certain extent under given circumstances the infirmity of human passion, it has gone to its fullest extent, under its paramount duty of protection, when it,requires that the cause which justifies the passion shall be serious; that the passion so aroused shall be sudden and violent, and if one's passion, although justly aroused, has had time to cool, then passion shall be no defense.    A careful reading of the statute must lead to the·conclusion that no evidence of opprobrious words or abusive language, except that which is used at the time of the assault, can be given in evidence.    It is provided that ˙on the trial of an indictment for assault and battery, the defendant may give in evidence to the jury opprobrious words or abusive language *used by the prosecutor or person assaulted or beaten.* ˙ Used when?    The person is being tried for a particular act of assault and battery; he has no defense other than words and language.    The reason that he may give such words or abusive language in evidence is, that they might have been sufficient to excite his passion, and the whole matter is submitted to the jury for them to judge the battery and judge the cause, and determine

whether the cause, that is, the words, amounts to a justification of the battery; and in so determining, the jury must consider the words or language used, and compare them with the nature and extent of the battery. If the battery is disproportionate to the offense of the words which excited the passion, there can be no justification, and the words which can be given in evidence are those used by the prosecutor. We are, therefore, bound to conclude, from the language in which this section of the code is framed, from the object of its enactment, in the light of the common law and the general principles of criminal jurisprudence, that the evidence of opprobrious words or abusive language which is allowed to go to the jury in justification of an assault or an assault and battery, is of those words and that language which provoked the passion at the time that the assault was made or the battery was committed. This provision has long been the law of Georgia. It has stood the test of time, and has not, by the construction given it, contributed the sanction of law to that spirit, which is not unnatural, to personally redress our grievances and avenge our wrongs. It is a wrong for one to use, without provocation, abusive language to another; but it is not a wrong without a remedy. Section 396 of the Penal Code makes the use of such language, when made in the presence of another, which tends to cause a breach of the peace, a misdemeanor. The redress, and the only redress, which society, in the enactment of its laws, affords to one of its members is that redress which comes, after a legal investigation, by the judgment of a court. Revenge may be sweet, but the right to have it is not recognized by any principle on which the law of justification is founded. As civilization advanced, trial by wager of battle gave way to trial under the forms of law, which undertakes to both protect and punish. If we decline to accept it, and seek to redress our own wrongs, from motives of revenge or retaliation, we become subject to its restraining and corrective force. These principles must govern in the real interest of society at large, however inconsistent they may be with the natural feeling which seeks, even within bounds, to inflict corporal punishment for a wrong committed. The last-named provision of our code has in view the preservation of the peace, and af-

fords a punishment for one who, by use of abusive language, makes it probable that the peace will be broken. But if, notwithstanding such prohibition of the law, such words are used, and by such use the passion of a man is excited to a point where he beats another for using them, the jury may consider the character of the words, the extent of the battery, and declare that, in. consequence of such words, the one who commits the battery shall not be punished, because they were sufficient to justify the passion which caused the defendant to strike.

The court below committed no error in refusing to admit in evidence the publication alleged to have contained the opprobrious words and abusive language, nor in its charge on this subject, nor in the refusal to charge as requested; and the judgment must be          *Affirmed.     All the Justices concurring.*

SIMMONS, C. J., COBB and LEWIS, JJ., concurring. Being bound by the decision in the case of *Mitchell* v. *State, 41 Ga.* 527, we concur in the judgment; but as that case is under review, we think it should be overruled. Neither the reasoning of Chief Justice Lochrane in that case, nor that of Mr. Justice Little in the present case, is, in our opinion, sufficient to support the conclusions reached by them. The statute declares that, " On the trial of an indictment for an assault, or an assault and battery, the defendant may give in evidence to the jury any opprobrious words, or abusive language, used by the prosecutor, or person assaulted or beaten; and such words and language may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury." Penal Code, § 103. The evident purpose of the General Assembly in making this provision was to entirely abrogate the common-law rule, which recognized no such defense, and to give to the jury in such cases very wide latitude in determining whether words and language of the character described should, in the case under consideration, justify the assault or the beating, as the case may be. Each case was to be passed upon by the jury according to its peculiar facts. If the words were uttered in the presence of the accused, the jury were to determine whether they were of a character calculated to provoke an assault, and if so, whether the beating which followed was

" in its nature and extent " disproportioned to the insult given. If the words were not uttered in the presence of the accused, the jury were to determine whether the assault made on account of such words was, under all the circumstances, a sufficient justification of the beating administered, taking into consideration the character of the words or language, the lapse of time between their utterance and the beating, the efforts made by the accused to ascertain whether the words were really uttered, all the circumstances attending the beating, and the " nature and extent " of the same. If the words or language were written or printed and not communicated to the accused by the person assaulted, the jury were to be allowed to pass upon the case, taking into consideration all the circumstances, as in cases where words not spoken in the presence of the accused are relied upon to justify the assault. Such was, we believe, the intention of the General Assembly; and in order to limit the statute in its application to cases of spoken words uttered in the presence of the accused, it is necessary to read into it words which are not there found, and which, when read into the statute, give it a meaning directly antagonistic to the plain and manifest legislative intention derived from the language of the statute as it stands. The purpose of the law was, of course, not to encourage or license the crimes of assault or assault and battery, but it was to deter the vituperator, the slanderer and the libeler, and impress upon such lawless characters the fact that, under certain circumstances, the law, taking into consideration the weakness of human nature, would not hold the person wronged by them responsible when the beating administered was not disproportioned to the provocation given in the words or language, whether oral, written or printed, and whether used in the presence of the accused or otherwise. The effect of the decision in the *Mitchell* case being to prevent the application of the statute in cases where it was clearly intended to be applicable, we think that decision should be overruled and the statute allowed to become operative.