### WILSON HAIRSTON ET AL. v. THE STATE.

1. ASSAULT. *Repelling trespass. Pointing fire-arms. Conditional threat.*
   One who points a pistol within shooting distance at a man who is unlawfully stopping his wagon and team, threatening to shoot him if he does not desist, is guilty of an assault.

2. ASSAULT WITH INTENT TO MURDER. *Malice essential.*
   But such acts alone will not sustain a conviction of an assault with intent to murder.

3. CONSPIRACY. *Proof necessary to connect attendants with offender.*
   Persons attending one on a lawful expedition, during which he alone commits a crime, are liable therefor only on proof of a conspiracy, or of their presence to aid him in any unlawful act he might do.

ERROR to the Circuit Court of Lowndes County.

Hon. JAMES S. HAMM, Judge.

*Orr, Meek & Sims*, for the plaintiffs in error.

1. The defendant, Wilson Hairston, was guilty of unlaw-

fully exhibiting a deadly weapon; the other defendants were guilty of nothing. To fix on Wilson Hairston the offence of an assault with intent to commit murder, it must have been shown that a loaded pistol was pointed by him within shooting distance. *Vaughan's Case*, 3 S. & M. 553. The exhibition of a pistol is not *prima facie* evidence of intent to kill, but may be shooting in a highway, Code 1871, § 2870; or hunting on Sunday, Code 1871, § 2683; or exhibiting a deadly weapon in a rude, angry or threatening manner, Code 1871, § 2699. The statement in *Jeff's Case*, 39 Miss. 321, must be taken in connection with the facts of that case.

2. An assault is an intentional attempt by violence to do an injury to another. Wharton Am. Crim. Law, § 1241. Where it appears that there is no present purpose to injure, there is no assault. Thus, where one laid his hand on his sword, saying, " If it were not assize time, I would not take such language from you;" and where one, raising his whip, said, " Were you not an old man, I would knock you down," — in each case it was held not to be an assault. Wharton's Am. Crim. Law, §§ 1241, 1242. The proof in the case at bar was then reviewed by the counsel, who contended that it showed a conditional threat, negativing the idea of immediate violence.

3. To authorize the conviction of an assault with intent to kill, such intent must be shown. Had Wilson Hairston intended to kill Richards, he would certainly have done it. *Jones's Case*, 11 S. & M. 317; 28 Ala. 693; 1 Met. 375; 29 Miss. 49; 37 Miss. 321; *Morgan's Case*, 13 S. & M. 242; *Morman's Case*, 24 Miss. 54.

4. The other defendants had nothing to do with the act of Wilson Hairston. They went with him on the expedition, which was lawful; but there is no proof of any conspiracy to injure Richards, nor did they participate in Wilson Hairston's acts. If these other parties were guilty of any offence, it was that of noisy, boisterous assemblage, which, perhaps, constituted a riot. Wharton's Am. Crim. Law, § 2474; 1 Russell on Crimes, 378; *State* v. *Connolly*, 3 Rich. 337.

*T. C. Catchings*, Attorney-General, for the State.

To sustain the indictment, it was necessary to show, 1, that

an assault was made on Richards; 2, that it was made with intent to murder him; 3, that it was made with a deadly weapon.

1. Of the first point there can be no doubt. With rude and threatening language, Wilson Hairston drew his pistol, and pointed it at Richards. The others were there with intent to aid and abet him, and are responsible for his acts. The evidence brings the case fully within the illustrations found in Wharton's Am. Crim. Law, § 1242 *et seq.*

2. The assault was made with intent to murder. The unlawful use of the deadly weapon is *prima facie* evidence of an intent to kill, which must prevail unless overcome by other proof. *Jeff's Case*, 39 Miss. 321. The use of conditional language in making the threat does not negative the idea of malice. That might have been merely to gain an unfair advantage of Richards, by throwing him off his guard. The manner of Wilson Hairston, the mission on which the defendants came, their advancing on Richards, — all were legitimate subjects for the consideration of the jury, and led them to believe that the intent was to take Richards's life.

3. The assault was made with a deadly weapon. The weapon used was a pistol, which was pointed by Hairston at Richards in an angry manner, with the threat that he would kill. The parties had come expecting and prepared for a conflict. Richards was in the act of stopping the mules when the pistol was drawn to shoot. From these facts the jury believed that it was loaded.

A new trial will be granted only where the verdict is clearly against the preponderance of evidence. *Cicely's Case*, 13 S. & M. 202; *McCann's Case*, 13 S. & M. 471.

CHALMERS, J., delivered the opinion of the court.

Wilson Hairston, in company with others, attempted to remove the personal effects of a laborer from the plantation of his employer, Richards, in defiance of the latter's orders. Richards, having made advances of money or provisions to the laborer, forbade the removal of his household furniture until he was repaid. In disregard of these orders, Wilson Hairston was driving the wagon containing the furniture

from Richards's plantation, when the latter attempted to stop the wagon, saying to Hairston that the laborer, Charles Johnston, must not move until he had settled the debt, at the same time reaching out his hand, as if to take hold of the mules. Hairston drew a pistol, and pointing it at Richards, said : " I came here to move Charles Johnston, and by G—d I am going to do it, and I will shoot any G—d-d—d man who attempts to stop my mules ; " urging his mules forward as he spoke. His manner was threatening and angry, and his voice loud and boisterous. The persons accompanying him, some of whom were armed with guns, pressed towards and around Richards, as if to aid Hairston. Deterred by the apparent danger, Richards forbore to stop the mules, and the wagon moved on.

Upon proof of these facts, Wilson Hairston and two of the men accompanying him, James Hairston and Edward Prowell, were convicted of an assault with intent to commit murder, and sentenced to two years' imprisonment in the penitentiary. Is this conviction sustained by the proof ? It is insisted by counsel for the plaintiffs in error that there was no assault, because the threats were conditional ; and reliance is had upon the old familiar cases, in one of which the assailant, laying his hand upon his sword, said, " If it were not assize time, I would not take such language from you ; " and in another the defendant raised his whip, and said, " Were you not an old man, I would knock you down ; " and other like cases, in all of which it was held that there was no assault. These were not conditional threats, properly so called, but rather declarations that the speaker did not intend to strike, because of an existing fact over which neither party had any control. They were expressions of a wish to strike, but a statement that he would not do so, by reason of existing facts. The case at bar is an offer to shoot, with something done towards accomplishing it, accompanied by a threat to shoot unless the opposite party complies with a certain demand, or forbears to do a certain thing. It therefore presents a case of an intentional offer to commit violence, with an overt act towards its accomplishment, based upon a conditional threat. Does this constitute an assault ? Hairston had a right to forbid Richards touching

his mules. Richards had no right to retain the furniture of his laborer in order to compel payment of the debt due. The laborer had the right to remove, and Hairston had the right to assist him. When the latter forbade Richards touching his mules, he simply forbade the commission of a trespass upon his property. A man has the legal right to protect his property against trespass, opposing force to force. If, therefore, the offer had simply been to commit a common assault, as by declaring that he would strike with his hand, or with some implement or weapon not dangerous, Hairston would have been guilty of no offence. If a man takes my hat, or offers to do so against my will, and I, drawing back my hand, declare that I will strike if he does not forbear, I only meet the trespass by an offer to use such force as may be appropriate and necessary. But I cannot at once leap to an assault with deadly weapons, and a threat to kill. If I were to kill under such circumstances, the killing would be murder; and hence I have made an assault which, if carried into a battery with fatal results, would constitute the gravest crime. As no trespass upon property will primarily justify the taking of life, so an offer to commit a trespass cannot justify an assault with a deadly weapon, accompanied by a threat to kill unless the party desists. The means adopted are disproportioned to and not sanctioned by the end sought. We think, therefore, that Hairston might well have been convicted of an assault. *Morgan's Case*, 3 Ired. 186; *Myerfield's Case*, Phillips (N. C.), 108; *Smith's Case*, 39 Miss. 521.

But he was indicted for and convicted of an assault with intent to commit murder. Does the evidence warrant such conviction? The intent in this class of cases is the gist of the offence. It is the intent rather than the act which raises it from a misdemeanor to a felony. It was held in *Jeff's Case*, 39 Miss. 321, that the intent might be inferred from the act; but there the facts were wholly different from those presented by this case. In *Jeff's Case* there was an actual and well-nigh fatal stabbing with a weapon proved to be dangerous. Here there was only a conditional offer to shoot, based upon a demand which the party had a right to make. While the law will not excuse the assault actually committed in levelling the pistol

within shooting distance, it cannot from this fact alone infer an intent to murder. The intent must be actual, not conditional, and especially not conditioned upon non-compliance with a proper demand. The law punishes the assault because it was committed. It cannot punish the intent, because that did not exist; and, as shown by the declaration of the party, would not arise except upon the happening of a certain event, *to wit*, the commission of a trespass by the other party. So far from the jury being allowed to infer an intent to murder, we think that the existence of such intent was, by the evidence, clearly negatived. In a somewhat extensive examination of the books, we have found no case of a conviction of assault with intent to kill or murder, upon proof only of the levelling of a gun or pistol. It follows, from these views, that while Wilson Hairston might properly have been convicted of an assault, the higher grade of crime was not made out against him.

Whether James Hairston and Prowell were guilty participants in Wilson Hairston's unlawful act, we think doubtful under the testimony; especially so as to Prowell. If present only for the purpose of assisting in the removal of Johnston, they were guilty of no offence. If in doing this they were riotous, disorderly and threatening violence, they were guilty of a riot; but they can be held guilty of the assault committed by Wilson Hairston only upon testimony tending to show previous conspiracy or present participation in that act, or upon testimony from which the jury could rightly infer that they were present to aid and assist him in any unlawful act he might do.

*Judgment reversed and new trial awarded.*