## LINDLEY *v.* STATE

No. 40993 November 24, 1958 106 So. 2d 685

*Sams & Jolly, G. L. Lucas*, Columbus, for appellant.

*J. R .Griffin,* Asst. Atty. Gen., Jackson, for appellee.

HOLMES, J.

The appellant, Donnie Lindley, was tried and convicted in the Circuit Court of Lowndes County on an indictment charging him with committing an assault and battery with intent to kill and murder one Claude Skelton. He was sentenced to serve a term of three years in the State penitentiary and he appeals.

He urges two grounds for the reversal of the judgment of conviction, namely: (1) That the evidence is insufficient to sustain a conviction of assault and battery with intent to kill and murder since at most the defendant made a conditional threat; and (2) that the following instruction granted to the State was fatally erroneous: ''The court charges the jury for the State that although intent to kill and murder is an essential ingredient of the offense charged in the indictment, yet there is no particular time during which it is necessary that it should have existed, or during which the defendant should have contemplated the crime. If the intent to kill or do some great bodily harm is executed the instant it springs into mind the offense is as truly assault and battery with intent to kill and murder as if it had dwelled there for a long time, unless the jury believe from all the evidence in the case that the assault and battery with intent was done in necessary or apparent self defense.''

We briefly review the evidence pertinent and material to the issues here involved. The State's proof shows substantially the following: The difficulty giving rise to the appellant's prosecution occurred on or about September 20, 1957, in Lowndes County where Skelton, the prosecuting witness, operated a garage. Skelton was a mechanic by trade. The appellant had formerly worked for Skelton but was forced to discontinue his employment

because of temporary incapacity resulting from burns which he sustained as the result of a gasoline explosion which occurred in the garage. On the evening in question, between sundown and dark, Skelton and two helpers were working on a truck undertaking to put in place the throw-out bearing and clutch. The appellant appeared at the garage and called to Skelton, who was performing his part of the work in the cab of the truck. Skelton got out of the truck and the appellant demanded of Skelton that he pay him $25 which the appellant claimed was owing to him by Skelton for the work performed by him at the garage following his recuperation from his burns. Skelton denied that he owed the appellant anything, and the appellant then drew a knife and advanced toward Skelton and applied a vile epithet to him and said to him with an oath, "you are going to pay me today or I am going to kill you." The appellant then knocked Skelton down and the two men then engaged in a fight, during which time the appellant was stabbing at Skelton with the knife. Skelton succeeded in getting away from the appellant and ran to the back of the garage. He was pursued by the appellant and overtaken and a further struggle ensued in which the appellant got Skelton on the ground and got straddle of him and continued stabbing him with the knife, telling him that he would kill him if he did not pay the $25. Finally Skelton told him he would pay him if he would discontinue his attack on him, and the two men then got up from the ground. Skelton had only $21 and he told the appellant that he would have to go next door and cash a check for the additional $4.00. Skelton then went next door and was followed by the appellant holding the knife in his back and telling him that he would kill him if he did not get the money. When they reached the door of the place next door, the appellant put his knife in his pocket and held it with his hand in his pocket until Skelton got the check cashed and paid the appellant the full amount of $25 demanded. The appellant then left.

According to the testimony of the doctor who treated Skelton for his knife wounds, Skelton received knife wounds in the lower abdominal area and lacerations in the pelvis and pelvic area and one deep cut or stab in the groin which penetrated to the bone and lacked only a fraction of an inch in penetrating the abdominal cavity. The doctor said he applied some ten to fifteen sutures in sewing up the wounds. The appellant was the only witness in his behalf. He testified he had formerly worked for the appellee and was forced to quit his job because of incapacity resulting from burns caused by a gasoline explosion in the garage; that when he was able to be up and about he went to the garage and asked Skelton if he could go back to work; that Skelton gave him a job answering the telephone at Skelton's car lot across the street from the garage; that he worked at this job for four days and Skelton owed him $25 for this work, but would not pay him; that on the evening of the difficulty he went to the garage to collect this money; that he, the appellant, had just that day received a bill from his doctor and the hospital for treatment in connection with the burns which he sustained; that he needed the money to pay this bill; that when he first arrived at the garage he talked for a short time to one of Skelton's employees; that Skelton, who had been at work in the cab of the truck, came out of the truck and walked around where the appellant was, and that appellant asked him about the money which he claimed Skelton owed him; that Skelton went back to the truck and that finally Skelton came out again and had a throw-out bearing in his hand; that appellant then told him, "I have got to have the money to pay my debts, it ain't nothing but right for you to pay me"; that Skelton replied, "I ain't going to pay you nothing"; that appellant then said, "yes, you are going to pay me"; and that when appellant said this, Skelton swung at him with the throw-out bearing and the two men engaged in a fight; that he, the appellant, did not draw

his knife until Skelton had swung at him with the bearing; that he, the appellant, had no intention of killing Skelton and in fact had no intention of fighting him; that Skelton told him he would pay him while they were scuffling on the ground and then they both got up from the ground. The appellant denied that he threatened to kill Skelton, and said that he had no intention of fighting Skelton when he went to the garage. He was asked if he denied taking his knife out and stabbing Skelton in the lower part of the abdomen, and he answered that he might have. When asked if he could account for the wounds that required fifteen stitches in one place and two or three in another place, he answered, ''I don't know how he got them.''

■■ ■ The appellant contends first that the evidence is insufficient to support his conviction. He says that at most the defendant made a conditional threat to kill and that a conditional threat is insufficient to support a conviction of assault and battery with intent to kill. In other words, it is argued that the appellant threatened to kill Skelton if he didn't pay him what he, the appellant, claimed Skelton owed him, and that the condition was complied with by Skelton and the appellant undertook to have no further difficulty with him. The appellant relies upon the cases of Stroud v. State, 131 Miss. 875, 95 So. 738, Hairston v. State, 54 Miss. 689, Craddock v. State, 204 Miss. 606, 37 So. 2d 778. These cases announce the rule that in cases of assault and battery with intent to kill and murder, the intent is an essential element of the offense and that where the facts show that the intent to kill was conditioned upon the happening of some other event which may within reason fail to take place, the real intent to kill and murder does not come into existence. These cases relied upon by the appellant are well reasoned and are sound under applicable facts, and we recognize the rule which they announce. We do not think, however, that the rule can be invoked under the facts of this case.

It is true that the appellant threatened to kill Skelton unless Skelton paid him $25 which he, the appellant, claimed Skelton owed him. The appellant, however, did not wait for Skelton to comply with the condition which he attached to his threat but proceeded immediately to make a violent and vicious assault upon Skelton with a knife, stabbing him in the abdominal area, inflicting one stab wound which penetrated to the pelvic bone, and inflicting cuts, one of which required some ten to fifteen stitches. ▄▄▄ This evidence was amply sufficient for submission to the jury for the jury's determination as to whether or not the appellant assaulted Skelton with the intent to kill and murder him. The jury so found and we are of the opinion that the evidence was amply sufficient to support the verdict of the jury. The jury might very well have reasoned from this evidence that without regard to whether Skelton paid him or not, he was not waiting to see whether Skelton complied with his demands, but proceeded to assault him, inflicting such wounds as barely escaped fatal injury. Under the facts of this case we do not think the appellant comes within the rule with respect to conditional threats. Smith v. State, 49 So. 2d 244.

▄▄ The appellant next contends that the court erred in granting to the State the instruction hereinabove set forth. Appellant's criticism of this instruction is two-fold. First, he says that the instruction tells the jury that no particular time is necessary for the intent to kill to exist or during which the defendant should have contemplated the crime. Appellant says that this is an inaccurate statement of the law. We are of the opinion that this criticism of the instruction is justified. The instruction fails to inform the jury that the intent to kill must exist at the time the appellant inflicted upon Skelton the knife wounds. In the case of Ceary v. State, 204 Miss. 299, 37 So. 2d 316, the Court said:

"The test under such circumstances is whether or not the accused intends to kill and murder at the time he fires

the shot or otherwise inflicts a wound and if such intent then exists, he is not to be exonerated of the felonious charge by what he does or fails to do thereafter."

 The appellant's other criticism of this instruction is that it announces to the jury that one may be convicted of an assault and battery with intent to kill and murder if there exists the intent to kill or *to do some great bodily harm*. (Emphasis ours) of course, the essential element of assault and battery with intent to kill is the intent to kill. We are accordingly of the opinion that the instruction complained of was erroneous and should not have been granted. However, we do not think that the granting of said instruction constitutes reversible error in view of the other instructions which were obtained by the appellant.

The appellant obtained fifteen instructions. Some four or five of them in unmistakable language told the jury that unless they believed from the evidence beyond all reasonable doubt that the defendant Lindley wilfully, unlawfully, feloniously, and of his malice aforethought, cut Skelton with the intent to kill him, it was their sworn duty to find the defendant not guilty. Viewing the instructions as a whole, we are of the opinion that the instruction complained of could not have misled the jury to appellant's prejudice. Of course, it is a well established rule that the instructions are to be read as a whole, and in view of the great number of instructions in this case announcing to the jury that the intent to kill was an essential element of the crime, we are of the opinion that the granting of the instruction complained of does not constitute reversible error.

It follows from the views hereinbefore expressed that the judgment of conviction should be and it is affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Kyle,* and *Arrington, JJ.,* concur.