**Perry James GREGORY and Alton Edward Urbauer, Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

**Nos. F–80–310, F–80–311.**

Court of Criminal Appeals of Oklahoma.

May 7, 1981.

---

1. *Baker v. State*, 4 Ark. 56.

Ben T. Benedum, Benedum & English,
Melvin D. Ernest, Norman, for appellants.

Jan Eric Cartwright, Atty. Gen., Danny K. Shadid, Asst. Atty. Gen., Thomas L. Spencer, Legal Intern, Oklahoma City, for appellee.

BUSSEY, Judge:

Perry James Gregory, F–80–310, and Alton Edward Urbauer, F–80–311, were convicted in Cleveland County District Court Cases No. CRF–79–541 and CRF–79–542, respectively, of Assault with a Dangerous Weapon, 21 O.S.1971, § 645, and Kidnapping for Extortion, 21 O.S.1971, § 745. The cases were joined for trial on the motion of the State. Appellants were sentenced to ten (10) years' imprisonment each on the kidnapping charges and two (2) years' each on the assault charges, the sentences to run concurrent as to each appellant. The charges arose out of an incident at the Joseph Harp Correctional Facility on July 30, 1979, in which inmates assaulted a guard and held him hostage for almost eight hours in order to press certain demands with regard to inmate grievances. The cases will be consolidated for purpose of review.

Appellants assert as their first assignment of error that the trial court erred in failing to grant a severance of the defendants for trial under 22 O.S.1971, § 439. However, we are of the opinion that the alleged error was not properly preserved for review in that the record does not reflect that a motion for severance under section 439 was urged. The first assignment of error is without merit. See *Jones v. State*, 527 P.2d 169 (Okl.Cr.1974).

■ As their second assignment of error, each appellant urges that the evidence was insufficient as to the assault with a dangerous weapon charge because an intent to do bodily harm to the guard was not shown. An intent to do bodily harm under 21 O.S. 1971, § 645 may be established by direct or circumstantial evidence. See *James v. State*, 599 P.2d 411 (1979). It is no defense that the intent to batter and do bodily harm is conditioned on some act of the victim where the accused cannot lawfully impose such a condition. See W. LaFave and A.

Scott, *Handbook On Criminal Law*, 613 (1972).

■ In this case, there was testimony that, at one point, appellant Gregory had a knife and threatened to "cut" the hostage if he tried anything. (Tr. 64) There was evidence that appellant Urbauer earlier put the same knife to the throat of the hostage and threatened to kill him when a second prison guard came toward them. Coupled with this is other testimony that Gregory jumped the guard and choked him; that Urbauer gouged the guard's eye with his finger; and that Urbauer, Gregory and a third inmate agreed at one point to kill the hostage, and then themselves, if lawmen rushed their cell; in addition, the knife was used throughout to guard the hostage.

We are of the opinion that the evidence amply supported the charge of Assault with a Dangerous Weapon with intent to do bodily harm under § 645, and the second assignment of error is without merit.

■ Appellants urge as their third assignment of error that a knife, purportedly the one used by the inmates, was admitted into evidence without testimony establishing a chain of custody. However, where the character of the evidence permits, direct testimony may suffice despite an incomplete chain of custody. See *Ervin v. State*, 580 P.2d 1002 (Okl.Cr. 1978).

In this case, the evidence established that the knife used by the inmates had been taken from a pocket of the hostage guard. The guard identified the knife admitted in evidence as his personal property, owned by him for about a year, and he testified that it was the knife removed from his person and used to threaten him by the inmates. This assignment of error is without merit.

■ As their fourth assignment of error, appellants contend that the evidence was insufficient to support the charge of Kidnapping for Purpose of Extortion under 21 O.S.1971, § 745, since the inmates' demands were no more than what they were entitled to. After the seizure of the guard-hostage, appellants delivered a list of demands to

prison authorities as conditions for the guard's safe release. The prison's negotiator agreed to investigate the demands, and the guard was later released.

Section 745 bars kidnapping "for the purpose of extorting any money, property, or thing of value or advantage." The offense so defined is not limited to money or, indeed, property, but extends beyond to things of value or advantage. It would thus appear to encompass the securing of promises relating to prison services, policies and conditions of confinement. Moreover, a review of the demands does not support the contention that the prisoners were clearly entitled to all the things demanded.[1] This assignment of error is without merit.

■ Appellants claim as their fifth assignment of error that the prosecutor engaged in improper closing argument. We have examined the remarks complained of [2] and find that they were not such as to have determined the verdict. Moreover, appellants wholly failed to object to the remarks. This assignment of error is without merit.

■ Appellant Gregory presents a sixth assignment of error, that his right to self-representation under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) was violated when the trial court refused his request to fire his appointed counsel and grant a postponement. This assignment of error is without merit. Appellant did not unequivocally express a desire to represent himself and exercise his *Faretta* right. Moreover, the request was not timely made, coming as it did after the jury was selected and sworn.

There appearing no error in the record which would justify modification or reversal, the judgments and sentences appealed from are AFFIRMED as to each appellant.

BRETT, P. J., and CORNISH, J., concur.

1. The demands were: later lock-ups (10:30 p. m. instead of 7:20 p. m.); a counselor available every day of the week; better and more food on weekends; a demand relating to alleged harassment; medical care available after 10:30, (presumably in the evening); better technical services, such as television repair; more toothpaste, soap, razors, tobacco "etc."; more gym activity without the "doors" locked; fans for every cell. (Tr. 201.)

2. The remarks appear in the record as follows: "You know, where do we draw the line? Where do we stop saying, you know___These people who are in jail, 'I'm a victim of society. I didn't have a hot lunch program. My parents were dead, and I lived in a foster home,' and all of the other terrible things, you know. When do we stop saying that? And say, 'You are responsible for your conduct.' 'You are responsible for what you do.' And not because they didn't hold your hand when you were in the penitentiary, you know. We've got to stop that, or our whole world is going to fall down around our shoulders, if we don't." (Tr. 183) "While you're upstairs, thinking what your verdict is going to be, stop thinking about the liver sticking to the plate, and think about being tied to that chair for eight hours with three convicts and a·knife and a piece of broken glass and them having the power of life and death over you for eight hours, and they're all felons, every one of them. Think about that. And then render a verdict and render a punishment that fits this, and let's make a big splash where it ought to be." (Tr. 184 and 185)